State of Wisconsin, Plaintiff-Appellant,
v.
Farrah E. Lott, Defendant-Respondent.
No. 03-3229-CR.
Court of Appeals of Wisconsin.
Opinion Filed: March 10, 2005.
Before Deininger, P.J., Vergeront and Lundsten, JJ.
¶ 1 LUNDSTEN, J.
The State of Wisconsin appeals a circuit court order in which the court denied the State's motion to reconsider the court's suppression of evidence against Farrah Lott on a charge of possession with intent to deliver cocaine. The police found the evidence during a search of Lott's car, which was parked on a public street by her apartment, pursuant to a warrant authorizing the search of Lott's apartment along with "any vehicles associated with said apartment." The circuit court concluded that the "any vehicles" language failed to satisfy the particularity requirement for warrants and that the good faith exception did not apply. The State asserts that the "any vehicles" language was sufficiently particular and, in the alternative, that the good faith exception applies. We reject the State's arguments and affirm the circuit court.

Background
¶ 2 Lott lived with Nicholas Johnson in an apartment unit in a multi-unit building. Over a nine-week period, police conducted a drug investigation, targeting Johnson, during which an undercover officer met with Johnson at various locations in order to make controlled drug buys. During these controlled buys, Johnson used at least three different vehicles. He twice used a Cadillac, with license plate 842CND, registered to Lott.
¶ 3 The police obtained a warrant to search Johnson and Lott's apartment, along with "any vehicles associated with said apartment." The complaint for the search warrant established Johnson's use of Lott's Cadillac and other vehicles, and also included the following averments:
a. That drug traffickers often place assets in names other than their own to avoid detection of these assets by governmental agencies;
b. That even though these assets are in other person's [sic] names, the drug traffickers continue to use these assets and exercise dominion and control over them;
....
g. That drug traffickers commonly maintain in their possession firearms [in] ... vehicles used by drug traffickers ....
....
k. That individuals engaged in drug trafficking often use motor vehicles to facilitate the transportation and sale of controlled substances.
l. That individuals engaged in drug trafficking often secrete evidence of drug trafficking within motor vehicles ....
m. That individuals engaged in drug trafficking often utilize vehicles which are not registered in their own names to facilitate the transportation, sale, or secretion of controlled substances.
....
u. Your complainant knows that individuals who engage in narcotics trafficking often possess evidence of narcotics trafficking in their residences and vehicles ....
....
Your complainant ... has been involved in a controlled substance investigation ... for the past 9 weeks. Your complainant knows this investigation involves the sale of cocaine base on numerous occasions to an undercover officer ... by a male subject ... NICHOLAS S. JOHNSON ....
¶ 4 In addition to authorizing a search of "any vehicles associated with" Johnson and Lott's apartment, the warrant specifically authorized police to search Lott's Cadillac. The warrant similarly authorized police to search another vehicle not registered to Lott that Johnson had used during one of the controlled buys.
¶ 5 While police were executing the warrant, Lott arrived in a Chevrolet Caprice, which she parked on the street two to four buildings away from her apartment building. After the police verified that the Caprice was registered to Lott, they searched the vehicle and discovered controlled substances inside.
¶ 6 The State charged Lott with possession of cocaine with intent to deliver. Lott moved to suppress the evidence obtained from her Caprice and argued that the "any vehicles associated with said apartment" language in the search warrant was overly broad. The circuit court granted Lott's motion, concluding that the "any vehicles" language in the warrant failed to meet the constitutional requirement for particularity.[1]
¶ 7 The State filed a motion for clarification and reconsideration, which included a request that the circuit court address whether the police acted in good faith pursuant to State v. Eason, 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625. The court denied the State's motion and concluded that the good faith exception did not apply. The State appeals.

Discussion 
¶ 8 Whether undisputed facts satisfy constitutional requirements for purposes of a suppression motion presents a question of law, which we review de novo. See State v. O'Brien, 223 Wis. 2d 303, 315, 588 N.W.2d 8 (1999). Although we accord deference to a warrant-issuing judge's probable cause determination, whether the language of a search warrant meets constitutional requirements is also a question of law and is thus subject to de novo review. See State v. Schaefer, 2003 WI App 164, ¶ 24, 266 Wis. 2d 719, 668 N.W.2d 760, review denied, 2003 WI 140, 266 Wis. 2d 61, 671 N.W.2d 848 (No. 01-2691-CR).

Whether the Warrant Was Overly Broad 
¶ 9 The State properly frames the first question: Is the warrant language "any vehicles associated with said apartment" so overly broad as to violate the search warrant particularity requirement? Applied here, the question is whether the search warrant authorizing police to search "any vehicles associated with" Lott's apartment validly authorized the police to search Lott's Chevrolet Caprice parked on the street at least two buildings away from the building housing Lott's apartment.
¶ 10 The search warrant particularity requirement serves three objectives: (1) it prevents general searches, (2) it prevents the issuance of warrants on less than probable cause, and (3) it prevents the seizure of objects when the warrant describes different objects. State v. Petrone, 161 Wis. 2d 530, 540, 468 N.W.2d 676 (1991). In order to satisfy the particularity requirement, the warrant must enable the police to reasonably ascertain and identify the places to be searched and the objects to be seized. See State v. Noll, 116 Wis. 2d 443, 450-51, 343 N.W.2d 391 (1984).
¶ 11 In arguing that the warrant was sufficiently particular, the State asserts that the "any vehicles associated with [Lott's] apartment" language must be reasonably read to include (1) any vehicle parked in sufficient physical proximity to the apartment, which the State defines as parking spaces reserved for tenants of the specified apartment, or (2) any vehicle owned or presently controlled by an apartment tenant while the search is being executed, regardless of the physical proximity of the vehicle to the apartment. The State derives these alternatives from a dictionary definition of "associate[d]" as meaning "closely connected" and by relying on cases holding that certain vehicles and other containers may be searched when those items are physically located on the premises subject to a search warrant.
¶ 12 The State acknowledges that the search of Lott's car cannot be justified based on the physical proximity alternative. The State relies, instead, on its "owned or presently controlled" alternative. Under that alternative, physical proximity is not needed. What is needed is knowledge on the part of police executing the warrant that the vehicle is owned or presently controlled by an apartment tenant when the search warrant is being executed. Under this theory, the officers could have searched Lott's car regardless where it was found, so long as the car was found during a time period authorized by the warrant. The State explains: "[S]uch a vehicle would not even have to be in close physical proximity to the apartment or in a parking space reserved for the tenant, so long as the warrant application provided probable cause to search such vehicle."
¶ 13 To the extent that the State's definition of "associated with" has any appeal, it rests on the fact that the specified container in this case is a car. But what if the warrant authorized the search of any container "associated with" Lott's apartment, so long as the container might hold evidence of illegal drug activity? Under the State's argument, such a warrant's "associated with" language would permit police to search any container owned or presently controlled by Lott regardless of its location. This example shows that the assertion that "associated with" can be read alternatively as divorced from physical proximity is not reasonable. It would not be reasonable to interpret a warrant referring to any container "associated with" Lott as authorizing the search of any container owned or presently controlled by Lott, regardless of the location of the container, even if the probable cause requirement was met.
¶ 14 Our view is supported by Professor LaFave's search and seizure treatise:
Sometimes a warrant will be issued for the search of certain premises and "all automobiles thereon." Such a warrant, it would seem, is particularly vulnerable to challenge with respect to the vehicle description.... The risk of error is compounded when the plural "all automobiles" is used.... Similarly, a search warrant for certain premises and "all vehicles ... associated with the occupants of said premises" is so ambiguous as to be invalid, as executing officers "are left to wonder what `all vehicles ... associated with the occupants of said premises' means and whether or not it requires (for example) that the occupants own the vehicles or that the vehicles be located at [the specified] home."
2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.5(d), at 593-95 (4th ed. 2004) (footnotes omitted; quoting in part State v. Ingram, 831 P.2d 674, 677 (Or. 1992)).
¶ 15 We note that the Wisconsin cases cited by the State indicate the importance of physical proximity. In State v. O'Brien, 214 Wis. 2d 328, 338-39, 572 N.W.2d 870 (Ct. App. 1997), aff'd, 223 Wis. 2d 303, 588 N.W.2d 8 (1999), we plainly thought it important that the vehicle searched was actually on the premises, as evidenced by our repeated references to that fact, including our observation that the vehicle "was parked on the premises, not on a public street."[2] Similarly, in State v. Andrews, 201 Wis. 2d 383, 387-89, 549 N.W.2d 210 (1996), the issuewhether a duffle bag belonging to an apparently innocent visitor to the premises could be searchedwould not have arisen had the bag not been physically on the premises when the warrant was executed.
¶ 16 Finally, we note that the State acknowledges the reason for the dearth of authority supporting its argument. The State points to the following quote from Professor LaFave's treatise: "Most likely because it is ordinarily permissible to conduct a warrantless search of an automobile on probable cause, there are comparatively few appellate decisions dealing with the question of how specific a description is required for a warrant to search an automobile." 2 LAFAVE, § 4.5(d), at 592 (footnote omitted; emphasis added). Police may normally search a "readily mobile" automobile without a warrant so long as they have probable cause to believe at the time of the search that the automobile contains evidence of a crime. See State v. Caban, 210 Wis. 2d 597, 607, 563 N.W.2d 501 (1997); State v. Marquardt, 2001 WI App 219, ¶ 31, 247 Wis. 2d 765, 635 N.W.2d 188.
¶ 17 In the context of its search warrant and good faith arguments, the State contends that the police had probable cause to search Lott's car. The State does not, however, ask this court to affirm because police were entitled to conduct a warrantless search of Lott's car based on probable cause. The State concedes it waived this argument because it did not make it before the circuit court. The State does not suggest any reason why we should blindside the circuit court with reversal based on an argument not made before that court, thereby deviating from the waiver rule we so often apply to defendants who attack circuit court decisions. See Caban, 210 Wis. 2d at 604 ("The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal.").[3]

Good Faith Exception 
¶ 18 In Eason, the supreme court held "that the good faith exception applies where the State has shown, objectively, that the police officers reasonably relied upon a warrant issued by an independent magistrate." Eason, 245 Wis. 2d 206, ¶ 3. This good faith exception is based on United States v. Leon, 468 U.S. 897 (1984). Eason, 245 Wis. 2d 206, ¶ 3. "Leon emphasized that even where an officer has obtained a warrant and abided by its terms, exclusion may nonetheless be appropriate." Id., ¶ 36.
¶ 19 To assist courts in applying the good faith exception, the Leon Court identified four examples of situations in which good faith should not be recognized:
Suppression ... remains an appropriate remedy [1] if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth[;] ... [2] where the issuing magistrate wholly abandoned his judicial role[;] ... [3] [where the] warrant [is] based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"[;] ... [and] [4] depending on the circumstances of the particular case, [where] a warrant may be so facially deficienti.e., in failing to particularize the place to be searched or the things to be seizedthat the executing officers cannot reasonably presume it to be valid.
Leon, 468 U.S. at 923 (citations omitted; emphasis added).
¶ 20 We focus our attention on the fourth Leon example and conclude, as did the circuit court, that this is not a proper case to apply the good faith exception.
¶ 21 The State argues that the warrant language "any vehicles associated with said apartment" is not so facially deficient that a reasonable police officer could not rely on that language to search Lott's car. The State points to its own earlier argument that the "any vehicles associated with" language authorized a search of vehicles parked in spots reserved for apartment tenants and of vehicles owned or presently controlled by those tenants. The State contends that this language carries only one uncertainty, that is, whether police might search the vehicle of a visitor or guest. In support of its argument, the State relies on United States v. Bianco, 998 F.2d 1112, 1116-17 (2d Cir. 1993), and United States v. Rollack, 90 F. Supp. 2d 263, 273 (S.D.N.Y. 1999). The State cites these cases for the proposition that a warrant lacking in particularity can be saved if the police executing the warrant are aware of the scope of and limitations on the search because in that circumstance the purpose of the "scope of and limitations on" requirements are satisfied. See Bianco, 998 F.2d at 1116-17; Rollack, 90 F. Supp. 2d at 273. We disagree.
¶ 22 The State's argument seemingly assumes that the "any vehicles associated with" language can reasonably be read as any vehicle in any place owned or presently controlled by Lott. We disagreed with the State's argument in the particularity context, and we find it no more persuasive here. Why was it reasonable for an officer to understand the warrant as authorizing the search of any vehicle owned or presently controlled by Lott, regardless of location? We do not find the answer in the State's briefs.
¶ 23 Accordingly, like the circuit court, we decline to apply the good faith exception.
By the Court.  Order affirmed.
NOTES
[1] The particularity requirement is grounded in the Fourth Amendment. See State v. Andrews, 201 Wis. 2d 383, 390, 549 N.W.2d 210 (1996). Article I, section 11 of the Wisconsin Constitution contains an analogous provision. See WIS. CONST. art. I, § 11. Generally, Wisconsin courts interpret the two provisions in concert, and the development of Wisconsin law on search and seizure parallels that developed by the United States Supreme Court. State v. O'Brien, 223 Wis. 2d 303, 316, 588 N.W.2d 8 (1999).
[2] Although the supreme court affirmed this court's decision in State v. O'Brien, 214 Wis. 2d 328, 572 N.W.2d 870 (Ct. App. 1997), aff'd, 223 Wis. 2d 303, 588 N.W.2d 8 (1999), the State cites only our decision. Our decision today would be the same regardless whether we applied our rationale or the supreme court's rationale; the rationales are sufficiently similar for our purposes here.
[3] In fact, the State seemed to affirmatively concede in the circuit court that the search could not be justified based on the automobile exception. During the first of two suppression hearings, when the parties were stipulating to certain facts, defense counsel stated: "And [Lott] left [the vehicle] on a public street. That she gave them no consent to search the vehicle. That the officers searched the vehicle pursuant to the search warrant." The State responded: "I would concede that." Then, when the court inquired, "[t]here is no search incident to arrest or anything like that?" defense counsel responded "No," and the State did not indicate any disagreement. In addition, in the State's subsequent motion asking the circuit court to clarify and reconsider the suppression ruling, the State sought to correct what it viewed as an erroneous characterization of its position on the permissibility of the search of Lott's car by asserting as follows: "The stipulation in this regard was that the warrant was the only basis for the search. That is, the parties agreed that the search could not be justified on the basis of consent, or exigent circumstances, etc." (emphasis added).