Argued and submitted September 11, decision of Court of Appeals affirmed; order of circuit court reversed, and case remanded to circuit court for further proceedings November 24, 2006, reconsideration denied March 20, 2007

STATE OF OREGON,
*Respondent on Review,*

*v.*

DANIEL EDWARD CARTER,
*Petitioner on Review.*

(CC 020195 CR; CA A122768; SC S53014)

147 P3d 1151

40

David T. McDonald, Portland, argued the cause and filed the brief for petitioner on review.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.**

KISTLER, J.

** Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Walters, J., did not participate in the consideration or decision of this case.

**KISTLER, J.**

The question that this case presents is whether a warrant that authorized the police to search for specific items but did not authorize them to seize those items is facially valid under Article I, section 9, of the Oregon Constitution. The trial court held that it was not. The Court of Appeals reversed, holding that, under Article I, section 9, a warrant may authorize only a search or only a seizure; it need not authorize both to be valid. *State v. Carter*, 200 Or App 262, 113 P3d 969 (2005). We allowed defendant's petition for review and now affirm the Court of Appeals decision.

The search warrant in this case authorized the police to search defendant's house for marijuana, materials used in manufacturing marijuana, and evidence (such as record books and ledgers) related to manufacturing and distributing marijuana. In executing the warrant, the police seized a number of items. The warrant did not authorize the police to seize those items, however. Defendant moved to suppress that evidence, claiming that the warrant was facially invalid because it did not authorize both a search and a seizure.[1] The trial court granted defendant's motion, and the state filed a pretrial appeal.

The Court of Appeals reversed and remanded, reasoning that Article I, section 9, permits a warrant that authorizes only a search. *Carter*, 200 Or App at 267-68. The court also reasoned that, because the warrant authorized only a search, it provided no basis for the officers to seize any evidence that they saw while executing the warrant. *Id.* Rather, the officers could seize the evidence only if an exception to the warrant requirement applied. On that point, the court agreed with the state that the plain view doctrine potentially applied. Because the application of that doctrine turned on evidentiary issues that the trial court had not resolved, the Court of Appeals reversed the trial court's pretrial order suppressing the evidence and remanded for further proceedings. *Id.* We allowed review to consider whether, under Article I, section 9, a warrant is facially valid if it authorizes only a search.

---

[1] Defendant has not argued that the warrant is invalid in any other respect.

■     Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Focusing on the participial phrase, "particularly describing the place to be searched, and the person or thing to be seized," defendant argues that a warrant must authorize both a search and a seizure. That conclusion follows, he contends, from the requirement that "no warrant shall issue" unless it particularly describes the "place to be searched, *and* the * * * thing to be seized."[2] (Emphasis added.)

■     In analyzing defendant's argument, we consider the "specific wording [of Article I, section 9], the case law surrounding it, and the historical circumstances that led to its creation." *See Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (stating methodology for interpreting original constitutional provisions). The text of Article I, section 9, does not say that, in order to be facially valid, a warrant must authorize both a search and a seizure, as defendant argues. Rather, the phrase on which defendant relies—"particularly describing the place to be searched, and the person or thing to be seized"—serves as a limitation on the authority to engage in either a search or a seizure.

To be sure, the phrase uses the word "and" in listing the items (places, persons, and things) that warrants must describe with particularity. But the function of that phrase is to identify the various objects to which the warrant requirement might apply and to make clear that those objects, if applicable, should be described with particularity. Identifying the various objects to which a warrant might apply is not the same thing as prescribing the necessary contents of each warrant.

---

[2] In his brief on the merits, defendant observes that "ORS 133.565(2) codifies the particularity requirements of Article I, § 9." Not only does he make no separate argument under that statute in his brief, but this court has recognized that a violation of such a statute would not provide a basis for suppression. *See State v. Henderson*, 341 Or 219, 223 n 3, 142 P3d 58 (2006) (explaining that, under ORS 136.432, unless statutory violation has constitutional dimensions, violation of ORS 133.575 did not warrant suppression).

The same conclusion follows from the remainder of Article I, section 9. Article I, section 9, applies to both search and arrest warrants. This court has long recognized that an arrest warrant will be valid if it authorizes only the seizure of a person; it need not also authorize a search. *See, e.g., State v. Jones*, 332 Or 284, 289, 27 P3d 119 (2001) (reaffirming that warrant may authorize arrest but not search); *State v. Davis*, 313 Or 246, 255, 834 P2d 1008 (1992) (same). However, if defendant's construction of Article I, section 9, were correct, "*no* warrant" could issue, regardless of whether it was an arrest or a search warrant, unless the warrant authorized both a search and a seizure. (Emphasis added.) Defendant's interpretation of Article I, section 9, is squarely at odds with this court's decisions recognizing that an arrest warrant may authorize only a seizure.

Defendant's interpretation is also difficult to reconcile with this court's decisions recognizing that the police can engage in acts that involve only a search. For instance, an officer would engage in a search but no seizure if he or she used a parabolic listening device to overhear an otherwise private conversation. *See State v. Smith*, 327 Or 366, 374, 963 P2d 642 (1998) (recognizing that such an action would invade protected privacy interests); *State v. Owens*, 302 Or 196, 207, 729 P2d 524 (1986) (explaining that "[a] 'seizure' occurs when there is a significant interference with a person's possessory or ownership interests in property"). Engaging in such a search would be constitutionally permissible only if the officer either first obtained a warrant or an exception to the warrant requirement applied. *See Owens*, 302 Or at 206 (recognizing terms on which officers may invade constitutionally protected privacy interests). Contrary to defendant's interpretation of Article I, section 9, those decisions rest on the premise that a court may issue a warrant to engage in only a search.

Finally, we look to the history of Article I, section 9. As this court has explained,

> "the historical motivation for this constitutional mandate was a fear of general warrants, giving the bearer an unlimited authority to search and seize. More specifically, the aim of the requirement of particularity is to protect the citizen's interest in freedom from governmental intrusion through the invasion of his privacy. If the search warrant

describes the premises in such a way that it makes possible the invasion of this interest in privacy without the foundation of probable cause for the search, the warrant is too broad and therefore constitutionally defective.

"In testing a warrant for definiteness it is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain the identity of the place intended. The description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties. If, however, a warrant purporting to authorize a search is sufficiently ambiguous that it is impossible to identify with a reasonable degree of certainty the particular premises authorized to be searched, the warrant may not be executed and any search pursuant to it is illegal, whether of the premises actually intended or not, because of the danger that the privacy of unauthorized premises will be invaded."

*State v. Reid*, 319 Or 65, 69-70, 872 P2d 416 (1994) (quoting *State v. Ingram*, 313 Or 139, 144, 831 P2d 674 (1992)) (internal quotation marks omitted; emphasis deleted); *see also State v. Bridewell*, 306 Or 231, 241-47, 759 P2d 1054 (1988) (Peterson, C. J., concurring in part and dissenting in part) (describing historical events that gave rise to Article I, section 9).[3]

The history confirms what the text of Article I, section 9, and this court's cases construing it demonstrate. The purpose of the particularity requirement was to prevent the use of general warrants—to ensure that a warrant described with particularity the person to be seized, the place to be searched, or the thing to be seized. Nothing in that history suggests that the framers intended to require that every warrant authorize both a search and a seizure, as defendant argues. Considering the text of Article I, section 9, this court's cases construing that provision, and its history, we conclude

---

[3] Judge Deady, who participated in drafting the Oregon Constitution, later explained that

"[Article I, section 9] is copied from the fourth amendment to the constitution of the United States, and was placed there on account of a well-known controversy concerning the legality of general warrants in England, shortly before the revolution, not so much to introduce new principles as to guard private rights already recognized by the common law."

*Sprigg v. Stump*, 8 F 207, 213 (CCD Or 1881).

that a warrant that authorizes only a search or only a seizure is facially valid under Article I, section 9.

Defendant raises a second argument. He contends that, unless a warrant authorizes a seizure as well as a search, it will be an impermissible general warrant. The question, however, whether a warrant authorizes both a search and a seizure has nothing to do with the question whether it is a general warrant. A warrant that authorized both a search and a seizure could do so in the most general terms and thus could run afoul of the particularity requirement. *See Reid*, 319 Or at 69-70 (describing vice of general warrants); Joseph Story, 3 *Commentaries on the Constitution of the United States* 748-50 (1833) (same). Conversely, a warrant that authorized only a search or only a seizure may be sufficiently particular—a proposition that the warrant in this case illustrates. The warrant in this case authorized the officers to search only for specific types of evidence in defendant's home. It thus limited the areas in which they could search and avoided the vice inherent in general warrants.

The Court of Appeals correctly held that the warrant at issue here was facially valid. Given the state's concession that the warrant does not authorize a seizure as well as a search, the Court of Appeals permissibly remanded the case to the trial court to determine whether the officers could seize the evidence (that they did seize) under the plain view doctrine. In the context of this case, that doctrine permitted the officers to seize evidence without a warrant if, in the course of executing this search warrant and while they were in a place where they had a right to be, they had probable cause to believe that evidence that they saw was either contraband or evidence of a crime. *See State v. Sargent*, 323 Or 455, 463 n 5, 918 P2d 819 (1996) (evidence of a crime in plain view); *State v. Lippert*, 317 Or 397, 403, 856 P2d 634 (1993) (contraband in plain view).

The decision of the Court of Appeals is affirmed. The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.